The third case for argument is United States v. Scott Johnson. Mr. Miller, when you're ready. Thank you. Thank you, Mr. Miller. May it please the Court, my name is Darren Miller and I represent Scott Johnson on this  Your Honors, we raised two issues on appeal. First, whether plain error occurred when the government breached its plea agreement by not recommending the 25 years it had promised to recommend and that the sentence is substantively unreasonable, the 45-year sentence the Court ultimately imposed. Today, I only plan to discuss the breach of the plea agreement issue. As Your Honors know, plain error requires an error and that the error is plain, being clear and obvious under existing law and that occurred here. The government in its plea agreement promised to, quote, will recommend a sentence of 25 years' imprisonment. That promise was also reiterated at the change of plea hearing. Counsel, for time's sake, I want to cut straight to a portion of the requirement under plain error, which is a prejudice prong to show that there was prejudice to the defendant. It seems here, based on the statements of the Court, that it would be highly likely that if this case were sent back, it seems highly unlikely that the sentence would be any different based on the Court's evaluation of the record. What's your argument that prejudice has been shown? Well, Your Honor, I disagree. First of all, the sentence the Court imposed was a full 20 years more than even the government was seeking to recommend or agreed to recommend. So it was a very severe sentence was imposed. And I think what's also important to note is when you look at the argument that the government made, which we maintain violated both the actual terms of the plea agreement and the spirit, the government essentially argued no mitigating factors. And if you look at what occurred here, both the 20-year recommendation that the defense agreed to recommend and the 25-year recommendation that the government agreed to recommend were below guidelines. But the government didn't have a responsibility to argue mitigating factors. I didn't understand that to be your argument, was it? They have an obligation, as this Court decided just recently in Jennings, not to violate the spirit of the plea agreement. Well, but there's no obligation that the government make your client's case, right? I mean, they're limited to what's in the plea agreement. That's correct, Judge. So, I mean, I think it's fairly common. And the government lawyers have a duty of candor to the court if the court is going through aggravating factors, you know, to acknowledge what the record does and doesn't show. Let me ask you, there were kind of three statements that I took to be problematic or potentially problematic. Do we look at those in combination or are they individually problematic? In other words, when I want to find your strongest case for the claim that the plea agreement was breached, where do I look? Do I look at all three of those? Yes, Your Honor. I think you look at the entire, what occurred entirely at the sentencing hearing. And I think, actually, I think it's critical because I think, you know, perhaps there could be a slip of the tongue in certain cases and we're not looking for some kind of we're asking the court to look at what actually occurred at the sentencing hearing. And, as you said, there were three instances. First, the government, first of all, the government never just came in and said we'd recommend 25 years. Defense counsel did, though. I mean, true. But it was a government that promised to do so, and it did not. Instead, everything was qualified. It started off by saying that the government would restrict its recommendation to 25 years. So the way I read that, and tell me why it's not fair, is I read it, and I may be just misreading it, that the government was kind of defensive about a plea agreement that turned out to be pretty low, well below what the district court ended up with. And that those three comments in context are essentially the district court, or I'm sorry, the assistant U.S. attorney defending its decision to enter into a 25-year recommendation. I disagree, Your Honor. At no point does a, I mean, on appeal, the government argues that. Right. But in the district court, it was not argued that way. It wasn't argued that way. I'm saying that's the way the spin you could put on it, or the kind of clause. Yes. But I don't even think you can do that, because if you look at the victimless case, asked for leniency, wrote a letter to the court, and asked for a sentence that's not a life sentence. And so that's what the government had promised to ask for was 25 years, something less than a life sentence. So instead of the government saying, we agree with this victim, we feel the victim's rights are important, we're recognizing the victim's feelings here, the government instead basically argued that the victim's request shouldn't be given any credence, because there were pressures, supposedly, although there's no evidence from, she felt pressure from other family members. So do you think those arguments, those violated the spirit of the plea agreement? Is that the argument? Absolutely, Your Honor. Our argument is both that the government three times violated the terms of the plea agreement, never abided by the plea agreement. Not one time did the government just come and say, we recommend 25 years. And if you look at the Jennings case that was just decided, there was an actual, the government basically fought for its suggested sentence. It gave the court reasons. Said, well, he hadn't committed crimes of violence recently, and it gave the court reasons for leniency. And that is not what occurred here. I have a question to follow up on Judge Smith's question about the prejudice, about whether it affected the ultimate sentence. As I read the district court's response to the arguments from counsel, I don't think the district court mentioned the plea agreement or the agreement that the government would recommend 25 and you would 20. Am I reading that accurately? That's correct, Your Honor. The court . . . How does that weigh in? Does that mean that it wasn't going to affect the district court or that maybe based on your position that had the district court gotten what you think is a non-breached plea agreement argument that it would have considered, how do we factor in that silence as to the plea agreement . . . The government's argument is kind of a wink and a nod. It's like, yeah, we're recommending 25, but, you know, it's not really justice and we're really asking for at least 25. And the court stated that it considered the arguments of the government. Obviously, it considers arguments and factors those in. But it didn't mention the agreement, correct? I'm sorry? The district court did not mention the agreement. No. The district, which, yes. So there's no indication at the sentence in here that the court was even, you know, I guess the government up front said it was kind of compelled to stick to the agreement. So I guess it was aware. But I also think regarding the prejudice, Your Honor, that the victim's letter, the victim's feelings for how a defendant should be punished are heavily weighed typically by a court. And where here the government breached its plea agreement by undermining the victim's request for leniency . . . How so? Because the government . . . The court heard what the victim had to say. I'm sorry? The court heard what the victim had to say. Yes. But the government's argument was, yeah, the victim asked for leniency, but that's the result of more or less pressure from other family members. In other words, the victim truly doesn't want leniency. And so it's . . . And we don't have to prove that there was a definite impact. We just have to prove that there was a substantial probability that the sentence would have been left. I'm down to 37 seconds. You can reserve. Thank you. Thank you, Mr. Miller. Ms. Healy? Ms. Healy? Good morning. May it please the Court, my name is Megan Healy on behalf of the United States. I will start this morning with where the court started with the prejudice prong of the plain error review. Mr. Johnson cannot show a reasonable probability based on the record as a whole that, but for the alleged breach, he would have received a more favorable sentence. The district court here, in pronouncing its sentence and walking through the 3553A factors, relied on information in the PSR and on the record evidence. As Judge Kelly was asking Mr. Miller, it did not make any record of reference to the government's recommendation as a reason for its sentence. And this is very similar to this Court's opinion in the Rafe-Snyder case, which is cited in both parties' briefs. And in that case, the Court found no prejudice where the record showed that the Court's sentence was based on the PSR and on the defendant's criminal history, and there was no indication that the government's remarks were a but-for cause of the sentence. It's also similar to the Wells case, in which the district court relied on the PSR and there was no mention of the government's alleged breach in its reasoning. Beyond that, the record also shows that the district court would have imposed the same sentence without the government's recommendation. Walking through the 3553A factors, the government focused on the heinous and perpetrated on the victim in this case. Going back to Judge Kelly's question for your colleague, I mean, did the district court ever kind of acknowledge the government's recommendation here? And if not, or if so, does that matter to your argument? So, as Mr. Miller said, it did not explicitly reference the government's recommendation. But candidly, at the end of the pronouncement of the sentence, when he's saying all the things, he listed everything in the record, the 3553A factors, and he also referenced generally statements of counsel as things that he considered in the sentence. But when he's walking through and giving the reasons for his sentence, there's not a reference to the government's recommendation. As to the government's presentation, including counsel's arguments about the exact words that the AUSA used in requesting the 25 years, or I think he'd say he didn't request the 25. This was a downward variance, right? So, both the government was asking for five years less than the low end. Defendant was asking for 10 years less than the low end. So, if the government, either party, party's going to promise to recommend that the district court, any reason why the government would have entered this agreement with this particular defendant for a sentence that they believed was appropriate, yet still below the guideline range. That's, I think, that's where I'm struggling a little bit, because there was really nothing that the government offered to help the district court understand why they took that position. And I'm not saying the government has to come up and sort of sing the praises of the defendant. But it seems to me that if I'm the district court and the prosecutor says, I'm recommending a five-year variance downward, and they don't tell me why, I've really got nothing to go on. So, Your Honor, on looking at pages 12 to 13 of the transcript, when the prosecutor first starts making his presentation to the district court, he talks about, acknowledges that the victim is there and acknowledges the very difficult position that she is in, and between wanting an ongoing relationship with the family and dealing with what has happened to her here. And he said that's the result, referencing his comments there, that is the result of the plea agreement in this particular matter, kind of signaling to the district court, here's how we got to this plea agreement. And I note that the plea agreement is a floor-ceiling plea agreement, high-low plea agreement, however you want to refer to it. And so in the broader context, and I argued this in my brief, that the AUSA was responding to the arguments made in the defendant's sentencing memorandum for leniency in favor of its argument for the higher end of the range. And again, just in stepping back a little bit, the government was asking for leniency, too, and that's where I'm struggling with here. It's not simply, in some of the cases it seems like, okay, I'm going to argue for top of the range and you're going to argue for bottom. You were both asking for a variance, and that's what I think makes this one for me a little different, in that the district court just needs to understand that. And so, for example, in what you've cited, the AUSA references the victim and the difficult situation there, but who then says pretty much what you're saying, what the government was asking for, something less than life, and then he undercuts that by saying that's not necessarily, I mean arguably undercuts it. Let's say, how about that, arguably undercuts it by saying, well, she says not life, but, you know, et cetera, et cetera. And then the district court basically went for the life. So it's just a different setup here, I think, than some of the other cases that we've had in these sort of spirit of the agreement brief allegations. And I certainly understand what you're saying about arguably, but I do disagree with that characterization, in that not only do we have an obligation to take the victim's interest into account, which as I noted from the transcript was cited to the district court as saying this is how the plea agreement resulted, but also to factor other things in besides just the victim's wishes. And between the range of the 20 to 25, that's where the prosecutor focused his argument was 20 is not enough. That's what they're asking for. We're asking for 25. And here's all the reasons why, and citing the aggregating factors, including the very difficult situation that the victim was in in this case. I'd like to... Counsel, semantically, what's the difference between saying on the one side, Your Honor, a sentence of no more than 20 years is appropriate, or no more than, and then saying, Your Honor, at least 25? What is that saying to the person who's being asked to make a choice? So I just want to be clear that here the final statement was no less than 25, saying we don't want the 20 years. We want you to do the 25 that we're asking for. But what you just said was never said below. No, Your Honor. Well, the no less than was. Right, but the... Not explicitly. No, Your Honor, you're correct. But his entire argument up to that point was pushing back on the 20 and saying no less than 25, to push back on the 20 when you read the entirety in context. I would like to also note that the appellants referenced the word, the restricted word, as problematic. But in their brief on page 14, they conceded that that's not a literal breach of the plea agreement. The no less than... Which you concede that it's at least a breach in spirit? I think the argument that the appellant has made in this case is not, is the breach of the plea agreement, the spirit of it was a plea agreement for leniency. That's the argument that they've made with respect to the spirit of the plea agreement was one for leniency. And I disagree with that premise in the first place. The spirit of the plea agreement was, I think, to try to find a measure of justice that could be found in this case by resolving the case. And we argued that 25 was appropriate in looking at the case as a whole and where the parties ended up on resolution. I would also note that a number of these courts, a number of these courts' breach cases involve cases where the government has promised to do one thing or stipulated to do one thing and then turned and done something different. And we've cited those cases in our briefs. The Lovelace, Collins, Evey, Brown, Fowler, Jensen, Mr. Miller cited Lara and Yaw. Those all fall into that bucket. Then we have another bucket over here that is more similar to this case where the government made a recommendation and then other comments of the sentencing were later challenged as an alleged breach. And those cases are like the Pierre case, Zurheide, Rafe-Snyder, the Court's recent opinion in Jennings. And in those cases, the Court found, based on the records in those cases and how it fit into the body of the case law, that there was no plain error because the defendant's rights on the record had not been the government's alleged breach was not the but-for causation and there was no reasonable probability of a lower sentence. And it's our position that when you're looking at the broadscape of this Court's case law as a whole, that this case falls into that second bucket of cases. And with that, my time is almost out. I respectfully ask that this Court affirm the district court. Thank you. Thank you, Ms. Feely. Mr. Miller? Your Honor, the 25-year recommendation that the government was supposed to make was a below-guideline recommendation. By its very nature, it required the Court to exercise leniency. In the brief time I have, I'd just like to quote from Jennings, even where the government technically adheres to the plea agreement, it could still be a breach of the plea agreement when its conduct as a whole violates the spirit of the promise, and that's exactly what happened here, and we'd ask that you remand for resentencing. Thank you. Thank you, Mr. Miller. Thank you, counsel, for the argument you provided to the Court today in supplementation to the briefing we've been studying. We'll continue to study the matter and render decision. Thank you.